**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY SHERRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 7519** |
| | ) | |
| **SUN LIFE ASSURANCE COMPANY** | ) | |
| **OF CANADA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Mary Sherrell served as a research coordinator at the University of Chicago until February 2020, when the University terminated her position due to a loss of grant funding. Throughout her tenure, Sherrell suffered from depression and anxiety, which led her to seek psychotherapy. By January 2020, she contends, her condition had worsened. She applied for long-term disability insurance under her benefit plan with Sun Life Assurance Company of Canada. Sun Life denied her claim after finding that she did not qualify as "Totally Disabled" per the plan's terms.

Sherrell sued Sun Life pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), to challenge the denial of her claim. For the reasons set forth below, the Court concludes that Sun Life was not justified in denying the claim and enters judgment in favor of Sherrell.

**Background**

Sherrell began working for the University of Chicago in 1995, and she ultimately

became the Director of Research Services. She was diagnosed with anxiety, depression, and agoraphobia in 2010. She continued to work for the University and managed her condition with therapy and medication. She treated in consultation with Dr. Daniel Yohanna and Dr. Martin Greenwald, both of whom were psychiatrists at the University of Chicago Hospitals throughout her treatment. In 2018, Sherrell's boss approved her request to work remotely part-time, a request that was spurred by flare-ups of her anxiety and depression. This flexible work arrangement continued throughout the rest of her employment.

On December 9, 2019, the University informed Sherrell that her position would be terminated on February 29, 2020, due to a loss of grant funding. On January 10, 2020, Sherrell filed a claim for long-term disability benefits (LTD) with Sun Life. She cited her anxiety, depression, and agoraphobia as the causes and supported the claim with an "attending physician's statement" from Dr. Yohanna, who confirmed the diagnoses as well as planned treatment, specifically, electroconvulsive therapy (ECT). In her claim submitted to Sun Life, Sherrell explained that she planned to stop working on Friday, February 7 with an anticipated disability date of Monday, February 10, after which she would soon begin ECT. In a separate Family and Medical Leave Act form that Sherrell submitted to the University, Dr. Yohanna recommended short-term disability leave from February 10 to May 9, 2020, during the period while Sherrell would be receiving ECT.

In a phone interview with a Sun Life consultant at the end of January 2020, Sherrell explained that she intended to begin her ECT treatment on February 12 at the University of Minnesota because her daughter lived there and could assist with

2

transportation.  On February 19, Sherrell traveled to Minneapolis and met with a new

psychiatrist, Dr. Steve Olson.  He further discussed ECT with her, including the risks of

the treatment, such as memory loss, headaches, and a temporary prohibition on driving.

Sherrell then began ECT treatment on March 6.  Though the exact dates of her

treatment are unclear from the record, by May 15, Dr. Carol Peterson, a psychotherapist

with a Ph.D., documented that Sherrell had "made significant improvements since

receiving ECT."  Pl.'s Resp. to Def.'s Stat. of Facts ¶ 61 (dkt. no. 40).  Dr. Peterson

further documented the following diagnosis: "Major depression, recurrent, severe,

without psychotic features, Generalized anxiety disorder; Panic disorder/agoraphobia, in

partial remission."  *Id.*

Sun Life denied Sherrell's application for LTD benefits on March 26.  Sun Life

premised its decision on an independent behavior health consultant review, an

occupational analysis of Sherrell's research director position, and her treatment records.

Sun Life explained in denying Sherrell's application that she had managed her

conditions since 2010 and that there was "insufficient clinical evidence to support that

[her] behavioral health condition interfered with [her] ability to continue in her job if [her]

position was not terminated."  *Id.* ¶ 59 (dkt. no. 40) (alterations in original).  Sun Life

further pointed to the fact that Sherrell's ECT treatment did not begin until after her

employment had ended on February 29, and per the terms of the insurance policy, she

was not eligible for a long-term disability that arose after her last day worked.

Separate from her claim with Sun Life, the Social Security Administration (SSA)

approved Sherrell's claim for Social Security Disability Insurance benefits in August

2020.  Her Social Security claim included a medical assessment completed by Dr.

Howard Tin, a psychologist retained by the SSA.  Dr. Tin determined that Sherrell was

"incapable of performing sustained work effort in competitive employment and in an

unskilled work environment."  Def.'s Resp. to Pl.'s Corrected Stat. of Facts ¶ 39 (dkt. no.

38).  This was a key basis for a determination that Sherrell could not perform substantial

gainful activity, which in turn was the basis for awarding her Social Security disability

benefits.

Sherrell appealed the denial of her LTD claim with Sun Life later in August 2020.

Under ERISA regulations, Sun Life had the appeal reviewed by an appeal specialist

who was not involved in the initial denial of Sherrell's claim.  Sun Life also sought an

additional medical review of Sherrell's file from a physician certified in psychiatry and

neurology, Dr. David Yuppa, who submitted a report.  Sherrell also supplemented her

appeal with additional documentation, including updated ECT medical records,

physician statements, and her Social Security file.

Sun Life denied Sherrell's appeal in November 2020.  In its decision letter, Sun

Life first explained that based on Dr. Yuppa's report, it did not believe that Sherrell's

condition was worsening when she stopped working, meaning she could continue to

perform her job and thus did not qualify for LTD benefits.  Sun Life further discussed

that even if her condition had worsened in February 2020, she would not have satisfied

the disability policy's 90-day elimination period because her "post-ECT notes clearly

indicate[d] significant improvement in her symptoms of both depression and

panic/agoraphobia."  Pl.'s Resp. to Def.'s Stat. of Facts ¶ 80 (dkt. no. 40).  Sun Life also

acknowledged the award of Social Security disability benefits but declined to follow the

SSA's decision because the "reviewing doctor did not have access to Dr. Yuppa's

reports." *Id.*

Having exhausted Sun Life's internal review process, Sherrell filed this lawsuit on December 18, 2020.

## Discussion

Both parties have moved for entry of judgment pursuant to Federal Rule of Civil Procedure 52. "This procedure is essentially a trial on the papers, and is well-suited to ERISA cases in which the court reviews a closed record." *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 885 (7th Cir. 2015) (citation omitted). The parties agree that a de novo standard of review applies to this case, which, in effect, amounts to an "independent decision" about the claimant's entitlement to benefits. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 842 (7th Cir. 2009). The claimant, however, has the burden of proving that she is entitled to coverage, meaning the court will not "resolve[] doubts or gaps in the evidence in [the claimant's] favor." *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 451 (7th Cir. 2016).

The relevant term of the Sun Life disability policy provides benefits if Sherrell was "totally disabled," meaning that she has to show she was, "because of [her] Injury or Sickness, . . . unable to perform the Material and Substantial Duties of [her] Own Occupation" for a 90-day "elimination period" starting with the date of her claimed disability, in Sherrell's case, February 10, 2020. Pl.'s Resp. to Def.'s Stat. of Facts ¶¶ 6, 9 (dkt. no. 40). The policy defines "Material and Substantial Duties" as "the essential tasks, functions, skills or responsibilities required by employers for the performance of your Own Occupation"; not including "any tasks, functions, skills or responsibilities that could be reasonably modified or omitted from your Own Occupation." *Id.* ¶ 7. "Own

5

Occupation" means "the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began." *Id.* ¶ 8. The bottom line is that to qualify for LTD benefits, Sherrell has to prove that she could not perform her job's essential tasks and responsibilities from February 10 to May 9, 2020.

### A.     Medical basis for LTD

#### 1.     Sherrell's physicians' assessments

Sherrell argues that her physicians' assessments and her ECT treatment establish that she was unable to perform her job from February 10 through May 9, 2020. In her January 14 statement in support of Sherrell's LTD claim, Dr. Yohanna, one of her treating psychiatrists, opined that Sherrell "was severely impaired in her capacity for interpersonal relations, occupational/social functioning, sustaining work performance, attention span, and concentration," which prompted the order for ECT in the coming weeks. Def.'s Resp. to Pl.'s Corrected Stat. of Facts ¶ 18 (dkt. no. 38). Coupling this assessment with years of prior therapy and unsuccessful treatments such as transcranial magnetic stimulation—a less intensive treatment than ECT—over the summer of 2019, Sherrell contends the evidence establishes a "long history of treatment" showing that she had reached a point where she could no longer perform her job's responsibilities as of February 10. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 646 (7th Cir. 2007) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004)) (explaining how "repeated attempts to seek treatment" supports an inference that a condition was disabling).

To establish that she remained disabled throughout the elimination period, Sherrell points to her treatment regimen and the subsequent physician's notes. She received 12 ECT treatments in Minnesota from March 6 to April 3, 2020, a period during which she resided with her daughter, who helped with transportation because Sherrell could not drive while receiving treatment. Following this treatment, Dr. Yohanna prepared a report on June 12, 2020, in which he opined that Sherrell still could not "perform the job duties of managing a research portfolio." Def.'s Resp. to Pl.'s Corrected Stat. of Facts ¶ 28 (dkt. no. 38). Dr. Yohanna explained that although Sherrell's panic disorder and agoraphobia were in partial remission, she still suffered from major depression and generalized anxiety order. Given this evidence, Sherrell contends that she remained disabled throughout the entirety of the elimination period until May 9.

Sherrell further cites *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003), to support her position and respond to Sun Life's arguments that there is no evidence her condition had deteriorated and that she could have continued to work remotely. In *Hawkins*, the Seventh Circuit explained that an individual's medical condition can worsen over time such that she eventually qualifies for disability benefits because a "desperate person might force [herself] to work despite an illness that everyone agreed was totally disabling." *Id.* at 918. Sherrell asserts that her situation is no different. Both Dr. Yohanna and Dr. Greenwald observed and charted her worsening anxiety throughout 2018 and early 2019, and by May 2019, they first recommended that she consider ECT treatment. Over the remainder of 2019, Sherrell's condition continued deteriorating to the point that in November, another

physician at the University of Chicago, Dr. Dustin Ehsan, also recommended her for ECT. And eventually in December, Dr. Greenwald noted in Sherrell's chart that she would undergo ECT at the University of Chicago or the University of Minnesota. Based on this evidence, Sherrell disputes the contentions that there is no evidence that her condition deteriorated and that the flexible working arrangement that began in 2018 would have enabled her to fulfill her responsibilities as of early 2020.

Sun Life responds by pointing to commentary in the physicians' notes that downplays the severity of Sherrell's condition over the years and its impact on her work, which, it argues, suggests that she could still perform the responsibilities of her job. For example, in November 2018 Dr. Yohanna wrote that Sherrell "had gotten much better with accommodation, medication, group therapy." Pl.'s Resp. to Def.'s Stat. of Facts ¶ 38 (dkt. no. 40). Then in April 2019, Dr. Yohanna wrote that Sherrell "has gotten much better with accommodation, medication, [and] group therapy." *Id.* ¶ 40. And in October 2019, Dr. Yohanna wrote that Sherrell was "working alright from home" and "does get all the work done," though she felt "pressured to be in the office for certain meetings." *Id.* ¶ 43.

These quotations from the medical records (along with Sun Life's other points) fail to rebut the proposition that Sherrell's condition deteriorated over the years and, in particular, into early 2020. Rather, they corroborate Sherrell's contention that she was in a better mental state in 2018 and early 2019, which preceded her condition's decline prior to her submission of the LTD claim in early 2020. Moreover, to the extent Sun Life relies on Dr. Yohanna's statements as evidence that Sherrell could perform her job during the elimination period (again, February 10 through May 9, 2020), the Seventh

8

Circuit has admonished against the selective cherry-picking of medical evidence to deny a disability claim. *See, e.g.*, *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 777 (7th Cir. 2010); *Leger v. Tribune Co. Long Term Disability Plan*, 557 F.3d 823, 832–33 (7th Cir. 2009).[1] Put simply, Sherrell's medical records establish how her condition worsened in the years and months leading up to her LTD claim—circumstances that the Seventh Circuit similarly found persuasive in *Hawkins*.

Finally, the Court is further convinced of the deterioration of Sherrell's condition based on the fact that her psychiatrists contemplated ECT in May 2019 and eventually decided to order the treatment months later. ECT is generally reserved for "severe" cases of mental health conditions like depression and typically is ordered only when less intensive treatments have not worked. *See Electroconvulsive Therapy (ECT)*, Mayo Clinic (last updated Oct. 12, 2018), https://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/about/pac-20393894. It is extraordinarily improbable that Sherrell's physicians prescribed this kind of treatment and that Sherrell followed through with it solely for the purposes of bolstering her disability claim. *See Carradine*, 360 F.3d at 755; *see also Curtis v. Hartford Life & Accident Ins. Co.*, 64 F. Supp. 3d 1198, 1214–15 (N.D. Ill. 2014) (considering the extensive treatment the claimant sought as evidence of a valid disability claim).

In sum, the Court agrees with the assessment of Sherrell's physicians: her worsening condition, the physicians' corresponding prescription of ECT, and their

---

[1] Although both these cases were decided against the backdrop of arbitrary-and-capricious review, this principle holds equally true for de novo review. The standard of review turns on whether the plan "reserve[s] discretion." *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

subsequent assessment are sufficient to show that she could no longer perform the tasks and responsibilities of her job from February 10 through May 9, 2020.

### 2.  Dr. Yuppa's report

The parties next dispute the relevance of Dr. Yuppa's report—the key basis for Sun Life's denial of Sherrell's appeal—in which he concluded that Sherrell's medical records did "not support any psychiatric, cognitive, and/or behavioral functional impairment from 2/10/20 through 5/9/20."  Pl.'s Resp. to Def.'s Stat. of Facts ¶ 71 (dkt. no. 40).  Dr. Yuppa opined that there was no "material deterioration" in Sherrell's psychiatric functioning and that "workplace-specific personnel issues" instead prompted her claim.  *Id.*  He further read Sherrell's ECT records to "not support the presence of such a severity of symptoms," and he found it "inconsistent" that Sherrell was able to travel to Minnesota for treatment despite her condition.  *Id.*  Finally, Dr. Yuppa considered Sherrell's condition following the ECT treatment by reviewing records and talking to Dr. Yohanna over the phone, from which he inferred that Sherrell's condition had improved by June 2020.  In sum, Dr. Yuppa disagreed with the assessments of Sherrell's long-time treating psychiatrists.

Regarding Dr. Yuppa's disagreement over Sherrell's initial eligibility for LTD, the Court finds more persuasive the medical opinions of Sherrell's psychiatrists who treated her for years.  Of note, Dr. Yuppa never examined Sherrell.  Although an insurer is not prohibited from crediting the opinion of a physician who conducted only a file review, *see Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006), reliance on a consulting physician's file review that is contrary to a treating physician's opinion requires additional scrutiny, especially when the consulting physician's assessment

contradicts the opinions of multiple treating physicians. *See Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 540 (7th Cir. 2018); *Hawkins*, 326 F.3d at 917 ("[T]he superior information likely to be possessed by the treating physician, especially when . . . the consultant does not bother to examine the patient, may support the treating-physician presumption after all."). Moreover, firsthand clinical assessment of a psychiatric condition is particularly critical to accurately diagnose a condition, like Sherrell's, that is typically premised on subjectively reported symptoms. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014) ("[F]ile reviews are questionable as a basis for identifying whether an individual is disabled by mental illness."); *Dominic W. on behalf of Sofia W. v. N. Tr. Co. Emp. Welfare Benefit Plan*, 392 F. Supp. 3d 907, 917 (N.D. Ill. 2019) (Kennelly, J.).

As for Sherrell's continuing eligibility for LTD, the Court again does not find Dr. Yuppa's analysis persuasive. To the extent that Dr. Yuppa simply disagreed with the opinions of Sherrell's treating physicians following her treatment, such as Dr. Greenwald's and Dr. Yohanna's June progress notes, the same logic just discussed holds true. Sun Life also emphasizes Dr. Yuppa's reporting of commentary from Dr. Peterson that Sherrell's condition was in remission. But in doing so, Sun Life ignores the surrounding context: Dr. Peterson noted that Sherrell was still suffering from major depression and generalized anxiety disorder; it was only her panic disorder and agoraphobia that were in "*partial* remission." Pl.'s Resp. to Def.'s Stat. of Facts ¶ 61 (dkt. no. 40) (emphasis added). Furthermore, modest improvement alone does not equate to an ability to work. *See Tate v. Long-Term Disability Plan for Salaried Emps. Of Champion Intl. Corp. No. 46*, 545 F.3d 555, 560 (7th Cir. 2008) (explaining that

11

claimant improvement must be "shown to be connected in some rational way to her ability to work" for it to prove anything).

More broadly, the Court finds the opinions of six psychiatrists and psychologists—Drs. Yohanna, Greenwald, Ehsan, Olson, Peterson, and Tin, several of whom actually treated Sherrell—far more compelling than the opinion of a single psychiatrist retained by Sun Life.

**B.     Supplemental evidence**

Sun Life argues that the timing of the disability application vis-à-vis the termination of her employment suggests that in applying for LTD, Sherrell was motivated not by any actual disability, but rather by her desire to maintain her health insurance.  *See* Pl.'s Resp. to Def.'s Stat. of Facts ¶ 49 (dkt. no. 40).  To support this argument, Sun Life cites *Black v. Long Term Disability Insurance*, No. 04 C 1230, 2007 WL 2821997 (E.D. Wis. Sept. 27, 2007), *aff'd*, 582 F.3d 738 (7th Cir. 2009).  In *Black*, the district court noted the timing of the plaintiff's "abrupt decision to stop working" upon learning she was about to lose her job in determining that the insurer's disability denial was not arbitrary and capricious.  *Id*. at *8.  The claimant in *Black*, however, is distinguishable from this case.  First of all, the standard of review here is de novo, meaning the Court is reviewing Sherrell's claim from scratch and not simply considering whether the insurer acted arbitrarily.  That aside, Black's medical record showed that her heart condition was relatively stable in the year preceding her disability claim.  *Id.* at *2.  The opposite is true here.  The record documents that Sherrell's psychiatric condition was deteriorating in the months leading up to her disability claim.  Additionally, while the district court in *Black* discussed Black's motive in applying for disability, the

12

Seventh Circuit did not acknowledge this aspect. *See Black*, 582 F.3d 738, 746–48 (7th Cir. 2009). The Court finds that the overwhelming evidence of Sherrell's worsening condition outweighs any consideration of the timing of her LTD application, especially when her physicians were contemplating ECT for months prior to any termination news.

The Court also does not find Sun Life's (or Dr. Yuppa's) reliance on Sherrell's travel to Minnesota for treatment to be in the least bit persuasive on the ultimate question before the Court. First, Dr. Yuppa's original report incorrectly stated that Sherrell traveled "back and forth" to Minnesota. Second, Sherrell traveled to Minnesota so she could move in with her daughter who could help facilitate the logistical elements of the ECT treatment to take place at the Mayo Clinic, seeing as how Sherrell would not be able to drive for a period of time. More broadly, the Court fails to see how the fact that a person who suffers from severe anxiety, depression, and agoraphobia travels to get needed medical treatment suggests that she is able to perform the tasks of her job—and neither Dr. Yuppa nor Sun Life make a persuasive effort to show this.

Lastly, the Court finds the Social Security award is further significant evidence supporting Sherrell's claim of disability. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 773 (7th Cir. 2010) (concluding that a Social Security award alongside surgeries and medication "provide[s] strong evidence in support of a finding of continuing disability"). As Sherrell points out, Dr. Tin, the opining expert for the Social Security Administration, "did not fully credit the treating doctors' description of [her] agoraphobia, [but] he nonetheless found the weight of the evidence supported functional limitations severe enough to preclude employment." Pl.'s Opp'n to Def.'s Mot. for Entry of J. & Reply Memo. in Supp. of Pl.'s Mot. for Entry of J. at 11 (dkt. no. 39). Accordingly, based

13

on the assessment of its own psychologist, the SSA independently determined that

Sherrell met the more demanding requirements of the Social Security Act—that she be

unable "to engage in *any* substantial gainful activity."  42 U.S.C. § 423(d)(1)(A)

(emphasis added); *see also Holmstrom*, 615 F.3d at 772 (discussing how "stringent" the

Social Security standard for total disability is compared to a private policy).

To be sure, Sun Life was not required to agree with the SSA, but the Court does

not find Sun Life's arguments regarding the impact of the disability decision to be

persuasive.  *See Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1087 (7th

Cir. 2012) ("[A] plan administrator may not simply ignore [a Social Security award] but

must address it and provide a reasonable explanation for discounting it, especially when

the administrator operates under a structural conflict of interest.").  In its appeal

decision, Sun Life stated that Dr. Tin did not have access to Dr. Yuppa's peer review,

and discounted Dr. Tin's assessment largely on this basis.  But Dr. Yuppa had no

firsthand knowledge regarding Sherrell's condition; he had conducted only a record

review plus a call with one of the treating psychiatrists.  Thus it is highly unlikely that his

opinion would have meaningfully impacted Dr. Tin's assessment, as Dr. Yuppa was

essentially just another professional conducting the same type of review that Dr. Tin

himself performed.  Indeed, aside from Dr. Yuppa's September 2020 phone call with Dr.

Yohanna, Dr. Yuppa and Dr. Tin premised their medical opinions on the same records.

In sum, the Court finds that the Social Security award further buttresses the conclusion

that Sherrell established her entitlement to LTD benefits.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for judgment

[dkt. nos. 15, 17] and denies the defendant's motion for judgment [dkt. no. 35]. The

parties are directed to promptly confer regarding the appropriate form of judgment and

are to file (and send to the proposed order e-mail box) a proposed form of judgment by

February 23, 2022. A telephonic status hearing is set for February 28, 2022 at 9:20

a.m., but the Court reserves the right to vacate the hearing if it determines that no

hearing is needed. The following call-in number will be used:  888-684-8852, access

code 746-1053. Counsel should wait for the case to be called before announcing

themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  February 16, 2022

15